### L. MURRAY PERKINS

*v.*

### CHARLES F. PARTRIDGE and others.

Where representations were made by the holder of a mortgage for $7,000, that he had sold the mortgaged premises to the mortgagor for about $50,000; that it was first-rate property; that the land was ·good and the timber thereon valuable; that the land would be more valuable after it was cleared; that the mortgage was a good mortgage; and that the interest thereon had been paid regularly—all of which ·were false and fraudulent—*Held*, that they could not be regarded as *simplex commendatio;* and a conveyance of lands obtained thereby was set aside.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. B. A. Vail,* for complainant.

*Mr. S. M. Dickinson,* for defendants.

THE CHANCELLOR.

The complainant seeks to set aside a conveyance made by him to Charles F. Partridge, on the 1st of August, 1875, whereby he conveyed in fee to the latter his house and lot in Woodbridge township, in the county of Middlesex, for the consideration (including the price of certain household furniture sold with the property) of $10,000, subject, however, to a mortgage of $3,000 thereon. For the balance,

$7,000, of the purchase-money, after deducting the amount of the mortgage, he agreed to receive, and did receive accordingly, a mortgage of that amount then held by the defendant, Charles Partridge, father of the grantee, on nineteen hundred and twenty acres of wild land in Brown's tract, in Herkimer county, New York. The ground of the complainant's complaint is that he was induced to accept the last-mentioned mortgage through false and fraudulent representations in reference thereto made by the defendants. These representations, according to the bill, were, that the property was a good and safe security for the money the payment of which the mortgage purported to secure; and that the mortgaged land was sold by Charles Partridge to the mortgagor at the rate of $25 an acre. The bill alleges that, in fact, the mortgagor (who was also the obligor in the bond therein mentioned, and the payment of which it was made to secure) was a man of no pecuniary responsibility; and that the mortgaged premises were not sold by Charles Partridge for any such sum of money as the defendants represented, and were worth only about $2,000.

That the complainant was defrauded by the representations of the defendants, is clear from the evidence. His property was brought to the notice of Charles F. Partridge by Frederick Reed, a real estate agent, to whom Partridge had applied with a view to obtaining an exchange of some Brooklyn property of his for country property. Reed had the complainant's property also in hand to find a purchaser for it. He mentioned to each of the parties the property of the other, with a view to exchange. The complainant was not satisfied to exchange at the price at which the Brooklyn property was held. This was communicated by the agent to Partridge, who then said he had made up his mind to retain his Brooklyn property and get a country place in some other way. He then said that "his father (the defendant, Charles Partridge,) had a mortgage of $7,000 on land in Herkimer county which was good, which he would put in in exchange; that his father would let him have it to use,

but not for a cent less than the face of it; and that he would have to pay his father for it." After the contract was signed, and on the day when the deed was delivered and before the papers were exchanged, the complainant and Charles F. Partridge and his father being then at the lawyer's office to exchange the papers, Reed, who was there also, sought and obtained a private interview with Charles Partridge, the father (who seems to have interested himself in getting the contract drawn and signed), and then said to him that the complainant, as he, Reed, had learned, knew nothing about the $7,000 mortgage, had had no time to search the title or investigate the matter at all, and would have to rely entirely on what he, Partridge, said about it. Partridge then said that it was a perfectly good, first-class mortgage; that the parties were good, and that the interest had always been paid promptly; that he had sold the land for $25 an acre, and would not sell any more of the tract for less than $30 an acre. Reed thereupon informed the complainant of the purport of the conversation, and the deed was then delivered and the mortgage accepted. The complainant testifies that Charles Partridge came to see his property before the contract was entered into, and then mentioned the mortgage to him, saying that it was a good mortgage, and that he had sold the land on which it was for $25 an acre. The complainant testifies that Charles F. Partridge told him, both before and after the conveyance had been made, that he would have to pay his father $7,000 for the mortgage; that $6,999 would not buy it. The complainant's wife corroborates him in this statement as to one occasion, she having been present when Charles F. Partridge said substantially the same thing to him. The fact appears to be that Charles Partridge not only did not sell the mortgaged premises for $25 an acre, but did not sell them at all. He swears, indeed, that he sold them to the mortgagor, Thomas H. Phillipps, and the deed to the latter probably (it has not been laid before me) expresses a consideration in accordance with the representations, but it is evident that there was no *bona fide*

sale at all. Charles Partridge, indeed, swears that Phillipps paid something, besides giving the mortgage, as consideration, but admits that it was only from $10 to $25, and though he further says that Phillipps agreed to pay $15 or $20 an acre, Phillipps swears that he gave no consideration except the mortgage. It seems extremely probable that the conveyance to Phillipps was made merely in order to obtain a mortgage from an apparent purchaser. Charles Partridge testifies that he made an exchange of the property with certain persons whom he designates as Charles F. Bouton and DeWitt H. Phillipps (though the conveyance to Thomas H. Phillipps had then been made), and that he gave Thomas H. Phillipps a consideration for conveying directly to them. It appears that he gave him about $50 for his trouble in the matter. Thomas H. Phillipps says that he thinks the conveyance to Bouton and Phillipps was made on the same day on which the property was conveyed to him. The deed to Bouton and Phillipps has never been put on record, and neither of the defendants can give any trustworthy account of either of those persons.

The statement made by the defendants, of the manner in which the son accounted to the father for the value of the mortgage, is unsatisfactory.

Again, there is evidence of fraudulent design in the endorsements of interest made by Charles Partridge on the bond. Six months' interest is endorsed thereon as having been received in September (the word, however, is written over the word "March"), 1874, from Thomas H. Phillipps, and the same amount from him on the 7th of April, 1875, while the evidence is, that Thomas H. Phillipps conveyed away the property on the same day on which it was conveyed to him, March 6th, 1874, and he swears that he never paid Charles Partridge, or any one else, any interest on the mortgage. It is worthy of remark, in this connection, that Charles Partridge says, in his testimony, that he received this interest of Bouton and Phillipps, and that the Phillipps of that firm was not Thomas H. Phillipps. No

interest has been paid on the mortgage since it was assigned to the complainant.

The mortgaged premises appear to have been valued, in 1866, at $2 an acre, and their value consisted, principally, in the bark of the hemlock trees growing on them. The right to this bark was reserved by the grantors, in the deed to Partridge, and the bark has since been taken away by them. The land, therefore, appears to be of little, if any, value. Nor are the representations which were made by the defendants to induce the complainant to accept the mortgage, to be regarded as mere "dealing talk"—*simplex commendatio*. They were substantial, important representations as to existing facts, materially affecting the character and value of the mortgage. That the mortgaged premises had been sold, by the mortgagee, to the mortgagor for about $50,000; that the property was first-rate property; that the land was good and the timber valuable; that the land would be more valuable after it was cleared; that the mortgage was a good mortgage—all these are false allegations as to the existence of material facts.

By means of these false and fraudulent representations, made, it is evident, for the purpose of inducing the complainant to accept the mortgage as $7,000 of the purchase-money of his property, the defendants were enabled to obtain the conveyance of that property. The complainant made no investigation as to the character of the mortgage, or the value of the mortgaged premises, because of his confidence in those representations, and it appears that the defendants were anxious and in haste to close up the transaction and obtain a deed for his property. The complainant has been guilty of no laches to debar him from relief. It appears, from the testimony, that, by the agreement, Charles F. Partridge was to have the interest which would become due on the mortgage on the 6th of September, 1875. The principal of the mortgage was not due until March 6th, 1877. The bill was filed on the 16th of December, 1875. The complainant, before filing the bill, and after he found

that he could collect no interest on the mortgage, requested Charles F. Partridge to reconvey the Woodbridge property to him, offering to re-assign to him the mortgage, but Partridge refused. The complainant is entitled to relief. The deed should be set aside and a reconveyance to the complainant ordered on the complainant's re-assigning the bond and mortgage to the defendant, Charles F. Partridge. He, according to the testimony of his father, purchased it of him, and has paid him therefor, in full. Charles F. Partridge must account, also, for the use and occupation of the house and lot conveyed to him by the complainant, and for the value of the household furniture. The defendants will be decreed to pay costs.